GOSHORN, J.
Isle of Catalina Homeowners Association, Inc. (“ICHA”) appeals an order denying its request for a mandatory injunction requiring appellee Janine Pardee to remove a fence that she constructed without first submitting plans to and obtaining approval from ICHA’s board of directors, as allegedly required. The order also invalidates amendments to the deed restrictions of the subdivision which were filed in 1980. We affirm.
Pardee moved into the Isle of Catalina subdivision in 1991. At the time, a three-foot split-rail fence ran across the front of her property. In August 1993, Pardee began replacing the split-rail fence with a wood post and wire-mesh fence. The new fence includes gates which cross the driveway, fully enclosing the front of the property. It is undisputed that Pardee did not obtain approval from ICHA’s board of directors before beginning work on her fence, although she did obtain a permit from the local governmental authority. ICHA contacted Pardee in late 1993 and informed her that (in its opinion) her fence was in violation of the restrictive covenants of the subdivision. The parties were unable to amicably resolve the dispute, leading to a trial and the entry of the appealed order.
The history of the subdivision and the restrictions governing it is important to the resolution of this case. In 1958, the developer of the Isle of Catalina recorded restrictions on the subdivision which required approval of “the Developer or its successors” before improvements could be made to subdivision property. The developer reserved the right to amend the restrictions upon approval of 50% of the owners of the lots. In 1980, ICHA’s predecessor, the Catalina Recreation and Improvement Association (“CRIA”), recorded amended restrictions for the property which provide that approval for improve *665 ments must be obtained from the board of directors of CRIA. CRIA claimed that it was the successor to the developer and that therefore it was empowered to so amend the restrictions. CRIA reincorporated as ICHA in 1992, and ICHA brought suit against Pardee based -on the purported required approval of the board of directors.
ICHA has not shown that Pardee was required to submit plans to ICHA’s board of directors before constructing the new fence. The 1958 restrictions provide that they are binding for an initial twenty-five year period, followed by successive ten-year periods unless the majority of owners file a signed instrument modifying the restrictions in whole or in part. The restrictions could not be modified during the initial twenty-five year term except by the developer (or its successor) or perhaps by unanimous agreement of the homeowners.[1] See, e.g., Johnson v. Howells, 682 P.2d 504 (Colo.Ct.App.1990) (restrictions not amendable within initial time period absent unanimous consent of owners). CRIA had no power to amend the 1958 restrictions in 1980 because it was not the successor to the developer. See Ritchie v. Carnage Oaks Homeowners Ass’n, Inc., 592 So.2d 361, 363 (Fla. 5th DCA 1992) (“Nothing in the record supports the Association’s allegations in its complaint, that the Association succeeded to [the developer’s] interest.”). Indeed, the evidence in the record shows that the developer assigned the rights it had reserved in the restrictions to another person unrelated to this suit. Hence, CRIA could not amend the restrictions as the developer’s successor. Moreover, the 1980 amendments had the consent of only a majority of the owners rather than all of them.
Theoretically, the recording by a majority of homeowners of amended restrictions prior to the end of an initial term could become effective as of the end of the initial term. See, e.g., Illini Fed. Sav. & Loan Ass’n v. Elsah Hills Corp., 112 Ill. App.3d 356, 68 Ill.Dec. 340, 445 N.E.2d 1193 (1983) (holding that amendments recorded prior to end of initial term became effective upon expiration of the initial term); accord Pearce v. Scarcello, 920 S.W.2d 643 (Mo.Ct.App.1996); Failla v. Meaux, 237 So.2d 688 (La.Ct.App.1970). Under this rationale, the amended restrictions in the instant case could have become effective in 1983 — still prior to Pardee taking title and possibly requiring her to seek approval from the board. However, CRIA did not purport to amend under the provision authorizing homeowner amendment— instead claiming under the “successor to developer” provision — and the 1983 effective date was not argued by ICHA below and therefore was not preserved for review. Accordingly, we affirm the trial court’s order denying relief to ICHA. In light of this disposition, we do not address the other issues raised, including the validity of CRIA’s reincorporation as ICHA and the validity of the 1980 amendments absent the required signatures.
AFFIRMED.
W. SHARP, J., and LESTER, K, ■ Associate Judge, concur.

. The pertinent provisions of the, original restrictions provide: K
12.... Developer, its successols or assigns, may change, amend or modify any of these restrictions upon the approval of the owner or owners of fifty per cent (50%) of the lots in said subdivision.
13. These restrictions are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five (25) years from the date these restrictions are recorded, after which time said restrictions shall be automatically extended for successive periods of (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said restrictions in whole or in part.